GEORGIA,
Chatham Co.
APRIL, 1810.

Hopkins and
Odingsell
vs.
Bolton, Ex'r.

*Minutes of Superior Court, letter G. p. 268.*

*Chambers, April 7,* 1810.

HOPKINS and ODINGSELL *vs.* BOLTON, Executor.

### SHERIFF.

*Charlton,* Judge.

IT was admitted that this was an amicable suit, and the execution was issued for no other purpose than to compel an equal distribution of the estate of the testator, *John C. Livingston,* among the heirs and creditors. It is so expressed in the advertisement for the sale.

A levy was made by the sheriff, the property sold, and he has presented for payment the following bill of fees, viz :

*Francis Hopkins* and *Charles Odingsell*

vs.

*Bolton,* Executor of *John C. Livingston.*

Former and present sheriff's fees in this case.

| | |
|---|---|
| Levy, . . . . . . . . . . . . . | $1 00 |
| Advertising, . . . . . . . . . . . . | 8 00 |
| 201 days' subsistence, from 15th September, 1809, to 3d April, 1810, of fifty negroes, at 12½ cents per day, . . . . . . . . . | 1256 25 |
| Commission at 1 per cent, about . . . . . | 300 00 |
| | $1565 75 |

The sheriff having refused to deliver the negroes, or to give titles to the purchasers, unless this bill of fees were paid, I directed a mandamus to issue, requiring him to give titles to the purchasers, or to show cause why titles should not be given. Yesterday the sheriff appeared, in obedience to the mandate of the writ, and by his counsel, *Bulloch* and *Cuyler,* alleged, that the fees he had charged were allowed

by the act of assembly, and that all his predecessors had charged and received them.

It was conceded by his counsel, or it was not denied, that the negroes had not been removed from the plantation where they were found by the sheriff, and the levy made. It was farther conceded, that he had not furnished provisions for their subsistence, but that he was, notwithstanding, entitled to the sum charged for that item, as, from the moment of the levy, the negroes were in his custody ; he was responsible for their delivery on the day of sale, and for all losses which might occur in that interval of time, from carelessness, inattention, or neglect of official vigilance. It was urged, that if the sheriff had discharged his duty *with rigour*, the consequence would have been, a confinement of the slaves in the common prison of the county ; that, therefore, as a matter of *indulgence*, he had permitted them to remain upon the farm, by which indulgence the proprietor had the benefits of their labour until the day of sale ; and that it had been usual, under the circumstances of such an indulgence, to charge the fee for subsistence, the labour of the slaves being considered as far outweighing that fee as an equivalent. On this point Mr. *Bulloch* pressed the argument *ab inconvenienti*. He said, that if the sheriff were not allowed his charge for subsistence, under such a relaxation of his strict duty, the result would be highly injurious to the agricultural interest ; for that the sheriff would, in all future cases, take the slaves from the plantation, and put them in prison, where they would remain until the day of sale, which would only have the effect of saving the sheriff some trouble, but that it did not tend either to increase his responsibility or to benefit the plaintiff. The consequences were exclusively ruinous to defendants. Two adjudications were cited by Mr. *Cuyler*, which, under analogous principles, gave the fee to the sheriff ; one of these cases occurred in the mayor's court, (which, however, is no precedent for this court,) and another in the Superior Court, in support of the allegation, that the sheriff considered himself responsible for the delivery of the slaves on the day of

GEORGIA,
Chatham Co.
APRIL, 1810.

Hopkins and
Odingsell
vs.
Bolton, Ex'r.

GEORGIA,
Chatham Co.
APRIL, 1810.

Hopkins and
Odingsell
vs.
Bolton, Ex'r.

sale, and for all other consequences which attach themselves to his official station.

An affidavit of *John Eppinger*, late sheriff, was made and submitted, which states in substance : " That he made no agreement for the relinquishment of his charge for subsistence : that he applied for indemnity to relieve him from the custody of the negroes, which was refused by the agent of the defendants : that he always considered them in custody upon *his* official responsibility, and that he had appointed a Mr. *Spencer* and a Mr. *Thiess* to take care of them upon the plantation." The present sheriff, *John Eppinger*, junior, deposes nearly the same facts. On the part of the purchasers of these slaves, it is contended by their counsel, *Harris* and *Woodruff*, that the fee for subsistence, under the circumstances of this case, is not allowed by law, and if not allowed by the law, it cannot be sanctioned by usage ; and that the charge for subsistence cannot be admitted, unless there is an *actual* and literal furnishing of provisions of the kind and quality prescribed by the act of assembly. Mr. *Harris* denied that the sheriff *could* charge the fee for subsistence, because the statute had expressly given it as a part of the emolument of the jailer. And it was farther urged, that if the responsibility of the sheriff for the safe keeping of the slaves, whether they were confined in jail, or left upon the farm, entitled him to the fee for subsistence, yet that, even upon that ground, the charge must be considered inadmissable ; for, from the depositions submitted by the purchasers, it appeared that no responsibility was considered as attached to the sheriff, either for the delivery of the negroes on the day of sale, or for any losses which might occur in the mean time. In support of these suggestions the joint affidavit of the plaintiffs and the defendant was read, which in substance states, " that they, the deponents, never considered the slaves, after the levy, as at the risk of the sheriff ; that when he made the levy, he was directed to leave them on the plantation in the custody of *Spencer*, the overseer ; that if the sheriff had attempted to remove them

without the consent of the plaintiffs or defendant, he would
have been prevented; and that the slaves, during the time
they remained upon the plantation, were supported at the
expense of the estate of *Livingston.*"    Mr. *Richardson*, in
his affidavit, states : " that the sheriff was not held responsible
for the negroes ; that he acted as the agent of the plaintiffs
and defendants, and that he never considered the sheriff as
farther responsible, than merely to prevent the negroes
being taken away, upon being notified of such an intention
by *Spencer*, the overseer, who had the negroes under his
charge by the direction and appointment of the deponent ;
that he does not recollect any demand of the sheriff for a
bond of indemnity ; and that no agreement was made between
himself and the sheriff for the subsistence fee."    Mr. *Law-
son* states, in his affidavit, that he believes, he expressly in-
formed and directed Mr. *Eppinger*, the sheriff, that the levy
was made by consent of all the parties, and that it was not
intended the property should be removed from the planta-
tion, and Mr. *Lawson* adds, in his deposition, that he, in giv-
ing these directions acted as agent for Mr. *Woodruff*, who
was the attorney for the plaintiffs, *Hopkins* and *Odingsell*.
Spencer, in his affidavit, states, " that he was appointed by
*Richardson*, and not by the sheriff, to take care of the negroes,
and that he never considered himself accountable to the
sheriff, that the sheriff after the levy never came himself
upon the plantation, or any other person authorized by him,
during the time the deponent had the negroes under his
protection ; that he never understood the sheriff was to re-
ceive any compensation for the subsistence of the negroes,
and that they were supplied out of the provisions of the plan-
tation."

    *Jacob Thiess* states, in his affidavit, " that he never con-
ceived himself deputized by the sheriff, that the sheriff did
not interfere with the slaves to his knowledge, after the levy ;
that he, the deponent, brought in the negroes on the day of
sale ; and that he considered himself so much under the au-
thority of Mr. *Bolton,* one of the defendants, that he would

GEORGIA,
Chatham Co.
APRIL, 1810.

Hopkins and
Odingsell
vs.
Bolton, Ex'r.

38

GEORGIA,
Chatham Co.
APRIL, 1810.

Hopkins and
Odingsell
vs
Bolton, Ex'r.

not have delivered the negroes without orders from *him*, to whom he supposed all the responsibility for their safe custody attached."

Upon this statement of the arguments of counsel, and of the testimony, it remains for me to decide :

1. Whether the fee for subsistence is allowed by the law.

2. If allowed, whether the sheriff can demand it under any circumstances, which show that provisions were not *actually* furnished.

1. The fees of all public officers are ascertained in the act of the general assembly entitled, " an act to revise and amend an act for ascertaining the fees of the public officers of this state,"—passed December 18, 1792.

Under the title " jailor's fees," there is this section: " Dieting negroes, allowing one quart of rice or corn meal per day, seven pence." Marb. and Crawf. Digest, p. 229. It then appears, that the fee for subsistence *is* allowed by the law, but whether it is allowed to the sheriff, or jailer, is the point made by my brother *Harris*. On this point I shall decide very laconically. The act of November 30, 1801, which vests the government, and regulation of the jail of Chatham county in the mayor and aldermen of the city of Savannah, and appointing them commissioners of the court house and jail, delegates only a *police* authority to the mayor and aldermen ; it merely relates to the *internal* management of the prison, and does not interfere with the responsibility which the sheriff may assume, if he thinks proper to do so. Upon *mesne process* he may make any house his prison ; and it has been so decided in this state. In *criminal cases* the court designates the common prison ; and then the sheriff is bound to observe the ordinances and resolutions of the city council ; this responsibility ceases, as soon as he delivers over the prisoner to the jailer of this county. His responsibility will cease also, if he places slaves in the common prison, for the law transfers it immediately to the shoulders of the jailer appointed by the corporation. So long, therefore, as slaves levied upon by the sheriff remain in *his* custo-

dy. and under the guarantee of his official responsibility, he is jailer *quo ad hoc*, and entitled to the fees which he charges for subsistence ; but these fees he will not be entitled to unless the subsistence is *actually* furnished, or there is a *contract* which dispenses with it ; as soon as the levy is made, the slaves are in the possession and legal custody of the sheriff ; and he may consider the farm, or plantation of the defendant, as his prison.

GEORGIA,
Chatham Co.
APRIL, 1810.

Hopkins and
Odingsell
vs.
Bolton, Ex'r.

2. Has a responsibility attached to the sheriff in this case ? The plaintiff and defendant state very explicitly, in their affidavit, that they did not consider the slaves as levied upon under the usual and rigorous principles of an execution ; that he was directed by them to leave the slaves upon the plant tion, and that they would not have permitted him to use any authority over the slaves, contrary to *their* wishes and directions.

This is the testimony, and this was the understanding of the plaintiffs and defendant. The same impressions were entertained by Mr. *Richardson* and Mr. *Lawson*, by *Spencer* and by *Thiess*. The sheriffs, have consequently misconceived the compact between them and all the other parties ; and I am therefore of opinion, that the fee for subsistence under the particular circumstances of *this case*, ought to be deducted.

Let a peremptory mandamus issue.

*Woodruff*, for the rule.
*Bulloch* and *Cuyler*, against it.